*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WOLVERINE SIGN WORKS,

        Petitioner-Appellee,

v

DEPARTMENT OF TRANSPORTATION,

        Respondent-Appellant.

UNPUBLISHED
May 21, 2019

No. 340621
Shiawassee Circuit Court
LC No. 17-009340-AA

Before: SHAPIRO, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

Respondent, Michigan Department of Transportation (MDOT), appeals by leave granted[1] the circuit court's order reversing the decision of an administrative law judge (ALJ). The ALJ concluded that petitioner, Wolverine Sign Works (Wolverine), owned six signs that were out of compliance with § 7b of the Highway Advertising Act of 1972 (HAA), MCL 252.301 *et seq.*, and ordered that the signs be brought into compliance or removed. For the reasons set forth in this opinion, we reverse the decision of the circuit court and reinstate the order of the ALJ.

## I. BACKGROUND

In January 2016, MDOT's Highway Advertising Specialist conducted a review of MDOT's directional-sign-permit inventory after reviewing an application for a proposed sign that did not comply with the HAA. MDOT determined that 31 of the 71 active signs were in violation of the HAA, including six of petitioner's 10 directional signs because the signs had "a phone number, a web site or a pictorial image that is prohibited" on them. When Wolverine disagreed that the signs were out of compliance, the MDOT employee sought additional guidance from the Federal Highway Administration (FHWA). The FHWA agreed that addresses

---

[1] *Wolverine Sign Works v Dep't of Transp*, unpublished order of the Court of Appeals, entered June 8, 2018 (Docket No. 340621).

and phone numbers were not allowed on directional signs. Subsequently, MDOT issued Wolverine a formal notice of noncompliance.

Following MDOT's decision, an administrative hearing was held before an ALJ. At the hearing, the parties presented evidence about how long the information had been placed on the signs, and evidence that two of the signs had been approved by MDOT decades previously even though the permit specifically included the information. MDOT argued that the approvals were erroneous and that the information on the signs exceeded the limitations specified by the HAA in MCL 252.307b. The ALJ concluded that MDOT properly determined that the signs were out of compliance with MCL 252.307b because they contained phone numbers, websites, and the phrase "All Outdoors," none of which were permitted by the statute.

Wolverine sought review of the ALJ's decision in circuit court, and the circuit court expressly refused to determine whether the allegedly prohibited information was allowed by the HAA. Instead, the circuit court stated, "Well, wait a minute – that's not the scope of this hearing, and that this [sic] Court's job isn't to say what a sign can contain and what it can't. This is, this Court is just asked to decide whether or not it, the [ALJ's] decision was arbitrary and capricious." Ultimately, the circuit court reversed the decision of the hearing referee, reasoning as follows:

> At MCL 24.306 the Administrative Procedures Act (APA) empowers the Court to set aside a decision that is, among other things: "Arbitrary and capricious or clearly an abuse of unwarranted exercise of discretion."
>
> * * *
>
> [T]he testimony unequivocally established that the challenged information has been present on these signs for years. Wolverine [sic] now challenges the content of these signs after years of permitting their existence.
>
> In intervening years a different employee . . . reviewed the signs and determined that the permits should not have been issued. And the Court will quote Wescott versus Civil Service Commission, 298 Mich App 158, at page 162, and that's a 2012 opinion, quote, "A ruling is arbitrary and capricious when it lacks an adequate determining principle," end quote.
>
> A new employee reviewing applications for sign placements, this Court finds, is not an adequate determining principle to justify years of inaction by MDOT, nor is it a sufficient basis for the ALJ to affirm the Department's actions.

Following the decision by the circuit court, MDOT then sought leave from this Court to appeal the decision of the circuit court. As previously indicated, this Court granted leave to appeal.

## II. ANALYSIS

On appeal to this Court, MDOT argues that the circuit court erred by reversing the ALJ's decision because it relied on its power of equity to reverse the administrative decision rather than

-2-

follow the limited scope of review granted by the APA. According to MDOT, the APA does not permit a court to set aside an administrative decision it finds inequitable. In this case, although the circuit court used the language in MCL 24.306 when stating that the ALJ's decision was arbitrary and capricious, the court ruled in equity. The circuit court based its reversal on the fact that MDOT had a new employee reviewing the signs and applications, rather than what the HAA permits on directional signs. The circuit court focused on the erroneous approvals of two permits in the past and indicated that the signs included prohibited information for years. The circuit court then essentially applied the doctrine of estoppel, an equitable principle, to justify reversal of the ALJ's decision. Estoppel is not a ground for relief under the APA. Accordingly, rather than review of the ALJ's decision to determine whether it was supported by law, the court used an equitable principle to reverse the decision. In doing so, the court exceeded the limited scope of review allowed under the APA.

Additionally, MDOT argues that because only two of the six permits were erroneously approved, and Wolverine changed a third sign only seven months before MDOT's violation notices, the record does not support the circuit court's conclusion that MDOT permitted the signs' existence for "years." Accordingly, the trial court's reversal of the ALJ's decision was both contrary to law and unsupported by the record.

Plaintiff argues that the decision at issue before the circuit court was not the ALJ's decision, but rather MDOT's decision to revoke Wolverine's permits. Plaintiff further argues that it is undisputed that in 1993 and 1997, MDOT issued permits for two Wolverine directional signs that explicitly stated that a phone number would be displayed. Those signs have been displayed in the same locations ever since. It can be presumed that those permits were approved within the law and that MDOT's interpretation of the HAA allowed the sign to display a phone number. Additionally, the signs were only challenged after they were up for all these years because the application permits were reviewed by a new employee, which reflects that enforcement was arbitrary and capricious. This is one of the grounds for reversal under MCL 24.306. There is nothing in the record that suggests that the court relied on equity. Rather, because the court relied on the correct legal principles, its decision should be affirmed.

Plaintiff also submits to this court that the circuit court was correct when it concluded that websites and phone numbers may be displayed on directional signs under the HAA because both pieces of information offer "direction information useful to the traveler in locating the activity or attraction," as allowed by MCL 252.307b(6). The basis for the circuit court's decision is found in plaintiff's contention that the statute does not define directional information or limit the information to only certain pieces of information, but rather includes examples of the types of information allowed on the sign. Indeed, these additional sources of information can provide a traveler with a means by which to obtain more specific directions to the destinations pictured. Likewise, the words "All Outdoors" are permitted by the statute because they communicate to the traveler that the destination has outdoor recreational activities.

We review a lower court's review of an agency decision to determine whether the lower court "applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings." *Wescott v Civil Serv Comm*, 298 Mich App 158, 161; 825 NW2d 674 (2012) (quotation marks and citation omitted). This constitutes a clearly erroneous standard of review. *Nason v State Employees' Retirement Sys*,

-3-

290 Mich App 416, 424; 801 NW2d 889 (2010). "A finding is clearly erroneous where, after reviewing the record, this Court is left with the definite and firm conviction that a mistake has been made." *VanZandt v State Employees' Retirement Sys*, 266 Mich App 579, 583; 701 NW2d 214 (2005). In comparison, whether the lower court applied the correct standard of review is a question of law that is reviewed de novo. *NDRC v Dep't of Environmental Quality*, 300 Mich App 79, 87; 832 NW2d 288 (2013).

Likewise, interpretation of a statute is reviewed de novo on appeal. *Sterling Hts v Chrysler Group, LLC*, 309 Mich App 676, 681; 873 NW2d 342 (2015). "The primary goal of statutory interpretation is to give effect to the Legislature's intent, focusing first on the statute's plain language." *Klooster v Charlevoix*, 488 Mich 289, 295; 795 NW2d 578 (2011). "If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written." *USAA Ins Co v Houston Gen Ins Co*, 220 Mich App 386; 389; 559 NW2d 98 (1996). When a term is not defined by the Legislature, its meaning can be ascertained by turning to a dictionary. *Sanchez v Eagle Alloy Inc*, 254 Mich App 651, 668; 658 NW2d 510 (2004).

Under the HAA, judicial review of an administrative determination following a hearing is governed by the APA, MCL 24.201 *et seq*. MCL 252.323(3); MCL 24.306(1). A final agency decision must generally be upheld by the reviewing court "if it is not contrary to law, is not arbitrary, capricious, or a clear abuse of discretion, and is supported by competent, material and substantial evidence on the whole record." *VanZandt*, 266 Mich App at 583-584, citing Const 1963, art 6, § 28; MCL 24.306(1)(d). Evidence is substantial if a reasonable mind would accept it as "sufficient to support a conclusion." *Dep't of Community Health v Risch*, 274 Mich App 365, 372; 733 NW2d 403 (2007). Substantial evidence requires "more than a scintilla of evidence," but "may be substantially less than a preponderance." *Id.*

"[A]n agency's decision that is in violation of statute . . . , in excess of the statutory authority or jurisdiction of the agency, made upon unlawful procedures resulting in material prejudice, or . . . arbitrary and capricious, is a decision that is *not* authorized by law and must be set aside." *Romulus v Mich Dep't of Environmental Quality*, 260 Mich App 54, 64; 678 NW2d 444 (2003) (quotation marks and citations omitted; alteration in original). "A ruling is arbitrary and capricious when it lacks an adequate determining principle, when it reflects an absence of consideration or adjustment with reference to principles, circumstances, or significance, or when it is freakish or whimsical." *Wescott*, 298 Mich App at 162. "Courts should accord due deference to administrative expertise and not invade administrative fact finding by displacing an agency's choice between two reasonably differing views." *Id.* (quotation marks and citation omitted). Moreover, the APA does not allow the reviewing court to "set aside an administrative decision it finds inequitable." *Huron Behavioral Health v Dep't of Community Health*, 293 Mich App 491; 813 NW2d 763 (2011).

In this case, the circuit court clearly erred in its review of the ALJ's decision by disregarding the ALJ's factual findings and failing to apply the appropriate standard of review. Essentially, the circuit court substituted its judgment for that of the ALJ. In particular, the circuit court's decision was based in large part on its conclusion that MDOT had allowed the signs to contain phone numbers, websites, and more for several years. After concluding that MDOT was responsible for the nonconforming signs, the circuit court then concluded that MDOT was

estopped from enforcing the restrictions of the HAA because MDOT itself was partly responsible for the noncompliance. However, as previously stated, the APA does not allow the reviewing court to "set aside an administrative decision it finds inequitable." *Huron Behavioral Health*, 293 Mich App at 498.

Additionally, the circuit court apparently failed to consider whether the ALJ committed an error of law or whether its decision was supported by competent, material, and substantial evidence. *VanZandt*, 266 Mich App at 583. Instead, the circuit court appears to have wholly disregarded the ALJ's factual findings, including its analysis of the applicable law. By failing to review the ALJ's decision under the correct standard, the circuit court applied incorrect legal principles, and its decision was therefore clearly erroneous. See *Dignan v Mich Pub Sch Employees Retirement Bd*, 253 Mich App 572, 578; 659 NW2d 629 (2002).

Section 3 of the HAA provides that the act is intended, in part, "[t]o improve and enhance scenic beauty consistent with section 131 of title 23 of the United States Code, 23 USC 131 . . . " 23 USC 131, which, in turn, provides in relevant part as follows:

> **(a)** The Congress hereby finds and declares that the erection and maintenance of outdoor advertising signs, displays, and devices in areas adjacent to the Interstate System and the primary system should be controlled in order to protect the public investment in such highways, to promote the safety and recreational value of public travel, and to preserve natural beauty.

> **(b)** Federal-aid highway funds apportioned on or after January 1, 1968, to any State which the Secretary determines has not made provision for effective control of the erection and maintenance along the Interstate System and the primary system of outdoor advertising signs . . . and Federal-aid highway funds apportioned on or after January 1, 1975, or after the expiration of the next regular session of the State legislature, whichever is later, to any State which the Secretary determines has not made provision for effective control of the erection and maintenance along the Interstate System and the primary system of those additional outdoor advertising signs . . . shall be reduced by amounts equal to 10 per centum of the amounts which would otherwise be apportioned to such State under section 104 of this title, until such time as such State shall provide for such effective control. . . .

> **(c)** Effective control means that such signs . . . after January 1, 1968, if located within six hundred and sixty feet of the right-of-way and, on or after July 1, 1975, or after the expiration of the next regular session of the State legislature, whichever is later, if located beyond six hundred and sixty feet of the right-of-way, located outside of urban areas, visible from the main traveled way of the system, and erected with the purpose of their message being read from such main traveled way, *shall, pursuant to this section, be limited to (1) directional and official signs and notices, which signs and notices shall include, but not be limited to, signs and notices pertaining to natural wonders, scenic and historical attractions, which are required or authorized by law, which shall conform to*

*national standards hereby authorized to be promulgated by the Secretary hereunder . . . .* [Emphasis added.]

The parties agreed that the signs at issue were directional signs. The term "directional sign" is defined in § 2(j) of the HAA as follows:

(j) "Directional sign" means a sign that contains only directional information regarding and the identification of 1 of the following:

(*i*) A public or private activity or attraction that is owned or operated by the federal or a state or local government or an agency of the federal or a state or local government.

(*ii*) A publicly or privately owned natural phenomenon or a historic, cultural, scientific, educational, or religious site.

(*iii*) An area that is in the interest of the traveling public, if the area is of natural scenic beauty or is naturally suited for outdoor recreation. [MCL 252.302(j).]

Further, § 7b of the HAA, MCL 252.307b, provides in relevant part as follows:

(1) Notwithstanding anything in this act to the contrary, [MDOT] may issue a permit for a directional sign for a publicly or privately owned activity or attraction that is nationally known or regionally known, that is of outstanding interest to the traveling public, and that is generally considered to be 1 of the following:

(a) A natural phenomenon.

(b) A scenic attraction.

(c) A historic, educational, cultural, scientific, or religious site.

(d) An outdoor recreational area.

\* \* \*

(6) The message displayed on a sign for which a permit is issued under this section shall only identify the activity or attraction and directional information useful to the traveler in locating the activity or attraction, including mileage, route numbers, and exit numbers. The message displayed on a sign for which a permit is issued under this section shall not include descriptive words or phrases or pictorial or photographic representations of the activity or attraction or the surrounding area.

In deciding whether Wolverine's signs were noncompliant with § 7b of the HAA, the ALJ made a determination that both phone numbers and website information were not among the

list of enumerated items permitted by MCL 252.307b. Additionally, the ALJ concluded that the phrases "All Outdoors," "Discovery," and "800-FUN-TOWN" were not permitted under the HAA. These conclusions were not errors of law.

MCL 252.307b(6) limits the permissible information on directional signs to "*directional* information useful to the traveler in locating the activity or attraction, including mileage, route numbers, and exit numbers," and explicitly excludes the use of "descriptive words or phrases or pictorial or photographic representations of the activity or attraction or the surrounding area." (Emphasis added.) "Directional" is defined to mean "of, relating to, or indicating direction." *Merriam-Webster's Collegiate Dictionary* (11th ed), p 353. "Direction" is defined in relevant part as "assistance in pointing out the proper route." *Id.* These definitions suggest that the information must inform the reader how to arrive at some point. As the ALJ reasonably concluded, telephone numbers, website addresses, and words like "All Outdoors" do not provide this information. While Wolverine argues that phone numbers and websites provide a *means* to obtain directional information, nothing in the HAA allows the use of references to additional resources to provide the directional information. Moreover, the directional signs identify entire cities rather than specific recreational areas. Accordingly, the use of "All Outdoors" is prohibited as descriptive words. As MDOT points out, the use of such language on a directional sign converts the sign into an advertising billboard. See MCL 252.307a(13) and (15).[2]

Consequently, as a matter of law, the ALJ appropriately concluded that MDOT's decision was appropriate, and that the expansion of items permissible on directional signs, such as the use of websites, phone numbers, and slogans, did not fit within the limitations established by the HAA. See MCL 252.307b(6). To the extent that the circuit court concluded that the ALJ's decision was arbitrary and capricious, that determination is unsupported by the record. "A ruling is arbitrary and capricious when it lacks an adequate determining principle, when it reflects an absence of consideration or adjustment with reference to principles, circumstances, or significance, or when it is freakish or whimsical." *Wescott*, 298 Mich App at 162. The ALJ correctly found that MDOT's decision was based on a sound determining principle, namely, that the signs were not in compliance with the relevant statutes. Additionally, the ALJ correctly held that MDOT's interpretation of the law was supported by the guidance provided by FHWA. "Courts should accord due deference to administrative expertise and not invade administrative fact finding by displacing an agency's choice between two reasonably differing views." *Id.* (quotation marks and citation omitted). Accordingly, there was no support for the circuit court's conclusion that the ALJ's ruling was arbitrary and capricious. Hence, the circuit court misapplied legal principles, rendering its decision clearly erroneous. See *Nason*, 290 Mich App at 424. Further, because the ALJ's decision was supported by law, it should have been upheld. Accordingly, we are left with a definite and firm conviction that a mistake was made. See *VanZandt*, 266 Mich App at 596.

---

[2] MCL 252.307a(13) and (15) allow the issuance of permits for the advertising of products, services, attractions, destinations, or retail businesses that are owned and operated or served by the sign owner under certain circumstances.

Accordingly, we reverse the decision of the circuit court and reinstate the decision of the ALJ.

No costs are awarded to either party, a public question being involved. *City of Bay City v Bay County Treasurer*, 292 Mich App 156, 172; 807 NW2d 892 (2011).

/s/ Douglas B. Shapiro
/s/ Stephen L. Borrello
/s/ Jane M. Beckering